Parker, J.
This is an action brought by the administrator of a de *268 ceased person against a railway company to recover damages on account of the death of the. deceased person, caused, as it is charged, by the tíegligence of the railroad company. The history of the case in the courts is, that there was a trial resulting in a verdict and judgment in favor of the plaintiff below . and that judgment was affirmed by this court, but was reversed by the supreme court, and the case coming back was again submitted to a jury, which returned a verdict in favor of the plaintiff below, which verdict was set aside by the trial judge, The case was submitted to another jury, which returned a verdict in favor of the plaintiff below, which verdict was set aside by the trial judge. The case was submitted to'another jury, which returned a verdict in favor of the plaintiff below, for $>3,500, and a motion for a new trial, made on behalf of the railroad company, was overruled, and judgment was entered upon the verdict, and now error is prosecuted to this court to reverse this last judgment.
The case in its general aspects is not materially different from the case as originally presented to the supreme court, and the statement of the case appearing in Lake Shore & M. S. Ry. v. Andrews, 58 Ohio St., 426, may be accepted as a very fair statement, with the exception that in the last paragraph, on page 427, it is said that the fact of the collision of the deceased with the bridge was shown by marks upon the casing commencing near the end at which the train entered the bridge, As the case is now presented, the majority of the court are of the opinion that the evidence fairly shows that the mark on the casing caused by the collision of deceased with the bridge, commences at the end of the bridge where the train upon which he was riding entered upon the bridge. When the case was before the supreme court it was reversed upon the ground that there was an absence of direct evidence of negligence in support of the verdict, I will read the syllabus:
“In the absence of direct evidence in its support, an allegation that one sustained injuries by reason of the negligence of the defendant is not sustained by proof of circumstances from which the fact that his injuries were so sustained is not a more natural.inference than any. other.”
And the court was of the opinion that the the,ory. of the plaintiff, below as to how this occurred was not sustained by *269 evidence which showed that that was the most natural inference to be drawn as to how the accident occurred. We. also accept, as applicable to the case as it appears before us now, very much of what was said in the opinion announced ■ by Judge Shauck in the case when it was before the supreme court, but we think that upon certain points-the evi-' dence is now more clear and more favorable to the defendant in error than it was then, and that while it is not widely different, it is materially supplemented.
It is a case which may be regarded as a close case upon the facts, and we were of the opinion when the case was before us upon the other record, that the evidence was sufficient to sustain the verdict; but the supreme court being.of a different opinion, we would not presume to affirm another judgment upon the same evidence, nor would we do so unless we thought there was a material difference to justify the case being again submitted to the supreme court upon the question of fact upon which the supreme court has announced an opinion. There having been three juries which were of the opinion that the theory of the plaintiff was sustained by the evidence, and one of'the juries being of that opinion upon the evidence as at first adduced, the trial judge being of the same opinion, this court being of the same opinion, and now the evidence being, .in the opinion of a majority of the court, materially improved so far as the plaintiff’s case is concerned, we believe we. should affirm this judgment and allow the supreme court to again, upon this record, consider the question of fact upon which it has arrived at a different conclusion.
In the course of his opinion, Judge Shauck says that.the theory of the plaintiff as to how this occurred, is not supported by any evidence whatever; the theory of the plaintiff being that the deceased, while in the line of his duty, standing upon the locomotive and leaning out to look to the rear of the train to see whether the train was in good order, whether it had broken apart or. was coming along properly, being unconscious and unaware of. the nearness of the bridge, came in contact with the bridge and so was injured and killed.
Why Judge Shauck says that that theory is.not supported ty.any evidence, is made more clear by what follows. He *270 proceeds to say: “Barton was last seen alive shortly before the locomotive reached the bridge when he was standing on the gangway, or platform, between the engine and tender, with his lantern on the floor by his side. After the train had passed the bridge, it was noticed that while his lantern was still there, he had disappeared. No one saw him leaning over the engine or make any effort to see the rear of the train. ” Ho far, that may be said of the case as it stands upon this hearing. Then he proceeds to 3ay: “No other evidence in the case suggests the manner of his death except the marks cn the casing. Certainly an allegation of fact may be established by circumstantial evidence, but the circumstances to have that effect must be such as to make the fact alleged appear more probable than any other. • The fact in issue must be the most natural inference from the facts proved. Not only did the circumstances here disclosed fail to make it appear that Barton’s death occurred in the manner alleged, but since the point at which his head struck the casing was certainly not more — it seems to have been less — than two feet above the level of the platform upon which he was standing when last -seen, the natural inference is that he fell from the train, The circumstances fail to show that the death of Barton was due to negligence alleged against the company. A recovery upon such evidence cannot be sustained, while it is held that the employer is not .the insurer of the safety of the employee. A verdict for the defendant should have been directed as requested.’’
The case as it was presented to the mind of the judge who rendered that opinion, and presumably to the minds of the judges of the court who concur, was of marks appearing upon the bridge somewhat distant from the end of the bridge where the train entered. According to the evidence as submitted to us now, those marks were there, but there was another mark, a mark which according to the evidence in this record indicates very dearly and distinctly that the head of the deceased struck upon the end of the bridge. Before, that was not plain, and the little evidence pointing that way does not appear to have made any impression upon the minds of the judges of the supreme court; they seem to have concluded that the only marks they should take ac *271 count of were the marks appearing at some distance from the end of the bridge where the train entered.
I should say that the evidence here is also more clear than it was upon the other record, that the injury which caused the death of the deceased was received at the back part and rather to the left side of the head, the skull being ■crushed. That fact would indicate, as it seems to us, a position consistent with the performance of this duty, which we find then and there devolved upon the deceased, of taking a position on that locomotive and leaning out so as to observe the rear end of the train, and if his head came in contact with the bridge as is alleged, that part of the head would strike upon the bridge, It being clear to our minds that he did strike at the end of the bridge, it seems to us that if he had slipped and fallen and then struck, he would have at once gone down as far as the ties and then fallen through; that he could not have continued upon the loco-, motive and between the locomotive and the bridge until his body reached the far end of the bridge, as it appears to have done, from the marks upon the bridge. The fact that after he had received that severe blow upon the head he still maintained his position upon the locomotive, or between the locomotive and the bridge, gradually sinking lower so as to make the mark described upon the bridge’s side casing from the near end of it where the train entered to the far end where the train went out, indicates to our minds that instead of slipping and falling from the locomotive so that he would have gone down to the ties or to the ground, he was still clutching the.handholds that he would take hold of in the performance of'his duty in looking towards the rear end of the train; that unless he had been clutching at those handholds during that brief period of time, he could not have maintained that position to make that mark upon the bridge; slipping and falling from the locomotive and striking in that way upon the end of the bridge, he would not have had hold of the handholds and would not have maintained his position upon the locomotive.
Therefore we think, with all that, it could not now be fairly said that the theory of the plaintiff is not supported by any evidence whatever, nor do we think it would be *272 fairly said that the most natural inference from the evidence is that he fell from the' train before he struck the bridge. We think the most natural inference from the facts proved is that he was in the line of his duty, having hold of the handholds,leaning from the locomotive and looking towards the rear.
In addition to the new evidence that I have mentioned, we have this other thing that is worthy of consideration, that while the witnesses before undertook to describe the positior^one would occupy in performing that duty, and their descriptions do not seem to have impressed the judges of the supreme court as being fair or reasonable, that is to say does not seem to have impressed them as being a reasonable account of the way in which this accident occurred, now we have, in addition to their oral description, this diagram presented here of the position that ons would occupy according to the oral descriptions given, and this diagram shows that one occupying that position would strike, the bridge with his head about as it is contended on behalf of the plaintiff below that the head of the deceased did strike this bridge on that occasion. While to some of us it might seem that that position was somewhat unusual, and perhaps an awkward attitude, as indicated by the diagram, yet we have the testimony of witnesses who say that that was a natural and proper attitude, and that testimony we are not at liberty to disregard; they certainly know more about it than we do, and for the reasons stated, we are of the opinion that we should not interfere with this judgment and verdict so far as the evidence goes.
Most of the other questions which were pressed upon our attention were considered by us when the case was here before. They have not been passed upon by the supreme court; that court did.not find it necessary to pass upon them, and if it concurs in our opinion as to the facts, it may then pass upon them and agree or disagree with us, but our own opinions upon those various points have not been changed by the arguments made and the authorities cited. The majority of us are of the opinion that the supreme court of Michigan has not held that the contruction of a bridge, of this form,-and as narrow as this, would not be 'negligence under any. circumstances. •
*273 As to the interrogatories which counsel for the plaintiff in error desired to have the trial judge submit to the jury, we have read them and considered them. They are not before me,but it is not necessary toread them, I will simply state that it is our opinion that if the answers had been as favorable as possible to the railway company, such answers would not and could not have required a different general verdict, and therefore they would not have controlled the general verdict; and that criterion is sufficient to justify the trial judge in declining to submit those interrogatories to the jury.
Finding no error in the record, the judgment of the court of common pleas will be affirmed.